**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PEARL A. LAPERLA,

    Plaintiff,

v.

PARTNERS MORTGAGE CORPORATION, INC.; AMERICAN HOME MORTGAGE SERVICING, INC.; OPTION ONE MORTGAGE CO.; and FIDELITY NATIONAL TITLE INSURANCE COMPANY,

    Defendants.

3:11-cv-167-RCJ-VPC

**ORDER**

_____

    Currently before the Court are Edith Hofmeister's Motion to Intervene (#8), Hofmeister's Motion for Hearing to Expunge Lis Pendens (#9), *Pro se* Plaintiff Pearl A. Laperla's ("Plaintiff") Motion to Remand (#15), Defendant Fidelity National Title Insurance Company's ("Fidelity") Ex Parte Motion for a Temporary Restraining Order on Order Shortening Time (#23), and Fidelity's Ex Parte Motion for an Order Shortening Time (#24). The Court heard oral argument on April 18, 2011. Plaintiff did not appear.

**BACKGROUND**

**I.    Facts**[1]

    Plaintiff Pearl A. Laperla ("Plaintiff") executed a note secured by a deed of trust on a

---

[1] The Court takes judicial notice of the public records attached to Intervenor Plaintiff Edith Hofmeister's Motion to Intervene (#8) and Supplemental Documents in Support of Hofmeister's Application to Expunge Lis Pendens (#39). *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

piece of property located at 1006 Manor Drive, Reno, Nevada, 89509, which was recorded in Washoe County on January 17, 2006.  (Deed of Trust (#8-1) at 2).  The mortgage, dated January 5, 2006, was for $750,000.  (*Id.*).  The lender and beneficiary on the deed of trust was Partners Mortgage Corporation ("PMC").  (*Id.*).  The trustee on the deed of trust was Premier Trust Deed Services, Inc.  (*Id.*).

PMC assigned the deed of trust to Option One Mortgage Corporation and recorded the assignment in Washoe County on November 15, 2007.  (Assignment of Deed of Trust (#39-2) at 2).  American Home Mortgage Servicing, Inc. ("AHMSI"), the successor-in-interest to Option One, assigned the deed of trust to HSBC Bank USA, NA and recorded the assignment in Washoe County on August 21, 2008.  (Assignment of Deed of Trust (#39-3) at 2).  On July 28, 2008, HSBC appointed AHMSI as attorney-in-fact to act in HSBC's place.  (Limited Power of Att'y (#39-4) at 5).  On September 25, 2010, AHMSI issued instructions to Default Resolution Network, a division of Fidelity, to initiate foreclosure proceedings on 1006 Manor Drive. (Foreclosure Referral (#39-7) at 2; Default Resolution Network (#39-8) at 2).

At some date before October 1, 2010, Laperla defaulted on her mortgage payments. (*See* Notice of Default (#8-2) at 2).  On October 1, 2010, Fidelity filed a notice of default and election to sell with the Washoe County Recorder's office.  (*Id.*).  The notice of default named Fidelity as "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary" under the deed of trust.  (*Id.*).  On December 29, 2010, HSBC and AHMSI executed a substitution of trustee and substituted Fidelity as the trustee over Premier Trustee Deed Services.  (Substitution of Trustee (#39-9) at 2).

On January 14, 2011, Fidelity recorded a notice of trustee's sale with the Washoe County Recorder's office.  (Notice of Trustee's Sale (#8-3) at 2).  The notice of trustee's sale stated that a trustee's sale was scheduled for February 10, 2011, at 11:00 a.m.  (*Id.*).  On February 22, 2011, Fidelity filed a trustee's deed upon sale with the Washoe County Recorder's office.  (Trustee's Deed Upon Sale (#8-4) at 2).  The trustee's deed upon sale stated that Edith Hofmeister had purchased the property for $391,500 at a public auction on February 10, 2011.  (*Id.* at 2-3).

On February 9, 2011, Laperla filed a complaint in the Second Judicial District. (*See* Compl. (# 1-3) at 2). On February 10, 2011, Laperla recorded a Notice for Lis Pendens for the property with the Washoe County Recorder's office. (Notice of Lis Pendens (#9-6) at 2).

## II.     **Laperla's Complaint**

On March 4, 2011, Defendant Fidelity filed a Petition for Removal in this Court and asserted diversity jurisdiction. (Pet. for Removal (#1) at 1). Fidelity attached Plaintiff Laperla's *pro se* complaint from the Second Judicial District. (Compl. (#1-3) at 2). Plaintiff's complaint named PMC, American Home Mortgage Servicing Inc., Option One Mortgage Company, and Fidelity as defendants. (*Id.*).

The complaint alleged three causes of action. In the first cause of action, Laperla claimed wrongful foreclosure and statutory violations of NRS § 107.080 regarding her property at 1006 Manor Drive, Reno, Nevada, 89509. (*Id.* at 3, 6). She claimed that her obligation to pay her mortgage was "discharged" as a result of federal bailout money paid to investors who now owned the note. (*Id.* at 7). She asserted that after her obligations on the note were "discharged" to investors the assignments of the deed of trust, note, declarations of default, directions to sell the property, and notice of default and election to sell, and notice of sale were nullities and that Defendants had no right to foreclose pursuant to NRS § 107.080. (*Id.* at 7-8).

Under the second cause of action, Laperla claimed slander of title against PMC and Fidelity because they had recorded a notice of default against her property. (*Id.* at 8). She claimed that PMC and Fidelity had no grounds to believe that she owned them any money on the note and that they knew who the "actual investors" of the note and deed of trust were and how much those investors owed. (*Id.*). She alleged that PMC and Fidelity had recorded documents that disparaged her title to the property because they had no authority to foreclose. (*Id.*).

Under the third claim for relief, Laperla alleged fraud in the inducement because PMA and Fidelity had failed to disclose to her at closing that there were going to be sub-prime loans, had failed to explain to her that she was not qualified to enter into the loan, and had failed to disclose to her that they were in a scheme to defraud investors and that the loans were more

3

than likely going to cause a "catastrophic drop in real estate values." (*Id.* at 8-9). She sought reformation, restitution, rescission of the notice of default, a restraining order against any eviction, and quiet title. (*Id.* at 12-13).

### III. Fidelity's Counterclaim and Third-Party Complaint

On March 23, 2011, Fidelity filed a Counterclaim against Laperla and a Third-Party Complaint against Joshua Carl, the Phurba Merchant Group, the New Earth Stewardship Coalition, the Pearl Laperla Living Family Trust, and the Guardian Alliance Incorporated ("third-party defendants"). (Counterclaim (#12) at 1-2). Joshua Carl was the "overseer of the Phurba Merchant Group, as Fiduciary of the New Earth Stewardship Coalition, agent for Pearl Laperla & Executive Trustee for Pearl Laperla Living Family Trust." (*Id.* at 2).

In its counterclaim/third-party complaint, Fidelity alleged the following. (*Id.* at 3). Laperla and third-party defendants had devised and participated in a lien and judgment scheme to defraud Fidelity, its employees, agents, and representatives over the use of their monies. (*Id.*). Although Laperla had never obtained an order or a judgment against Fidelity, third-party defendants, as agents for Laperla, had recorded a "Notice of Final Determination and Judgment in NIHIL DICIT" and a Uniform Commercial Code ("UCC") Lien in the amount of $2,250,000 against Fidelity. (*Id.*).

On October 12, 2010, and October 16, 2010, Laperla had mailed documents entitled "Notice of Intent to Lien" to Fidelity which contained false claims for monetary damages arising out of the foreclosure or attempted foreclosure. (*Id.* at 3-4). The Notice of Intent to Lien threatened Fidelity and its employees that Laperla and third-party defendants were going to record a lien against them in the amount of $2,500,000 if they commenced any further proceedings. (*Id.* at 4; Notice of Intent to Lien (#12-2) at 3).

Between October 12, 2010 and November 22, 2010, Laperla and third-party defendants mailed various documents to Fidelity that falsely claimed that Fidelity owed them $2,250,000. (Counterclaim (#12) at 4). On December 9, 2010, Laperla and third-party defendants sent a Notice of Final Determination of Judgment in NIHIL DICIT to Fidelity. (*Id.*). That document stated that Fidelity was in default and now owed $2,250,000 to Laperla and third-party

defendants. (Notice of Final Determination (#12-3) at 2).

On February 10, 2011, the New Earth Stewardship Coalition filed an UCC Filing against Fidelity in Delaware, listed itself as a secured party, and falsely claimed that, based upon the previous judgments and liens, Laperla and third-party defendants were the secured creditor of Fidelity and had a $2,250,000 security interest in the personal and real property belonging to Fidelity and its employees. (Counterclaim (#12) at 5). On March 4, 2011, Laperla had a document entitled "Rescission of Trustee's Deed" recorded with the Washoe County Recorder's office. (*Id.*). That document fraudulently stated that Fidelity had requested the recording. (*Id.*; Rescission of Trustee's Deed (#12-4) at 2). Neither Fidelity nor any of its agents had executed that document. (Counterclaim (#12) at 5).

Fidelity alleged causes of action for conspiracy to commit fraud, declaratory relief that Laperla and third-party defendants had filed false liens and judgments and had recorded a false Rescission of Trustee's Deed, and injunctive relief. (*Id.* at 5-7).

## DISCUSSION

**I.   Hofmeister's Motion to Intervene (#8)**

Edith Hofmeister files a motion to intervene and seeks an order to file a complaint in intervention pursuant to Fed. R. Civ. P. 24. (Mot. to Intervene (#8) at 1). Hofmeister purchased the property in question at the trustee's sale. (*Id.* at 3). She asserts that Laperla recorded a Notice of Lis Pendens on February 10, 2011, at 11:16 a.m. after Hofmeister had purchased the property at the trustee's sale that had commenced 16 minutes before. (*Id.*). Hofmeister seeks an order that she is the owner of the property and that Laperla has no interest in the property. (*Id.*). This motion is unopposed. (*See generally* Docket Sheet).

Pursuant to Rule 24(a), a court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

In this case, Laperla is trying to reclaim the property that Hofmeister purchased at a

trustee's foreclosure sale. Accordingly, the Court grants Hofmeister's motion to intervene (#8).

**II.     Hofmeister's Motion for Hearing to Expunge Lis Pendens (#9)**

Hofmeister argues that she is entitled to a hearing under NRS § 14.015 to have the lis pendens recorded by Laperla removed. (Mot. to Expunge Lis Pendens (#9) at 4). Hofmeister argues that Laperla's complaint fails to state a claim to support a lis pendens because the complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6). (*Id.*).

Nevada Revised Statute § 14.015 states that "[a]fter a notice of pendency of an action has been recorded with the recorder of the county, the defendant . . . may request that the court hold a hearing on the notice, and such a hearing must be set as soon as is practicable." Nev. Rev. Stat. § 14.015(1). At the hearing, the party who recorded the notice of pendency of the action must demonstrate that: (a) the action is for the foreclosure of a mortgage upon real property described in the notice; (b) the action was not brought in bad faith or for an improper motive; (c) the party who recorded the notice will be able to perform any conditions precedent to the relief sought in the action; and (d) the party who recorded the notice would be injured by any transfer of an interest in the property before the action is concluded. *Id.* § 14.015(2)(a)-(b). The party who recorded the notice must also establish that he or she is likely to prevail in the action or that he or she has a fair chance of success on the merits in the action and that the injury referred to above would be sufficiently serious that the hardship in event of a transfer would be greater than the hardship on the defendant. *Id.* § 14.015(3)(a)-(b).

Under the statute, if the court finds that the party who recorded the notice fails to establish the requirements of subsection 2, the court "shall order the cancellation of the notice of pendency and shall order the party who recorded the notice to record with the recorder of the county a copy of the order of cancellation." *Id.* § 14.015(5). "The order must state that the cancellation has the same effect as an expungement of the original notice." *Id.*

In this case, Laperla failed to demonstrate that she is likely to prevail in this action because she has failed to state a claim for wrongful foreclosure, statutory violations of NRS § 107.080, slander of title, or fraud in the inducement. *See Collins v. Union Fed. Sav. & Loan*

*Ass'n*, 662 P.2d 610, 623 (Nev. 1983) (wrongful foreclosure); *Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983) (slander of title); *Bulbman, Inv. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992) (fraud). In this case, Fidelity/Default Resolution Network had written authority from AHMSI, the attorney-in-fact of HSBC, to initiate the foreclosure proceedings on behalf of HSBC, the beneficiary of the deed of trust. *See* NRS § 107.080(2)(c) (stating that the beneficiary or successor-in-interest of the beneficiary or trustee must cause a notice of default to be recorded). Accordingly, the Court grants the motion to have a hearing on the notice of lis pendens and grants the motion to expunge the lis pendens. The Court hereby orders the cancellation of the notice of lis pendens and orders Plaintiff to record a copy of this order of cancellation with the Washoe County Recorder's office. The Court further notes that this cancellation has the same effect as an expungement of the original notice.

### III.   Plaintiff's Motion to Remand (#15)

In her motion to remand, Laperla, *pro se*, argues that her claims are state law claims, there is no federal question, and that the doctrine of absention mandates that this Court remand her case. (Mot. to Remand (#15) at 1). She asserts that foreclosure cases are best left for the Nevada Supreme Court to decide because federal authorities are not binding on Nevada courts. (*Id.* at 2). Laperla seeks a remand under the doctrine articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). (*Id.* at 5).

In response, Fidelity argues that this Court has subject-matter jurisdiction based on diversity. (Opp'n to Mot. to Remand (#18) at 3). Fidelity asserts that there is diversity because AHMSI is incorporated and has a principal place of business in Texas, and Fidelity is incorporated in California and has a principal place of business in Florida. (*Id.* at 4). Fidelity asserts that the amount in controversy is in excess of $75,000 because Plaintiff seeks to void a $750,000 loan. (*Id.*). Fidelity argues that the Court should not remand based on *Colorado River* because there is no difficult question of state law and adjudication in this Court would not disrupt any state efforts. (*Id.*).

In reply, Laperla argues the that the Nevada Legislature intended NRS § 107.080 to be

interpreted by the Nevada Supreme Court and not by the federal courts. (Reply to Mot. to Remand (#21) at 3).

Pursuant to 28 U.S.C. § 1332(a), the district courts have original jurisdiction in all civil actions where the matter in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs," and "the citizenship of each plaintiff is diverse from the citizenship of each defendant." 28 U.S.C. § 1332(a)(1); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996). A corporation is a citizen of "any State by which it has been incorporated" or "of the State where it has its principal place of business." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306, 126 S.Ct. 941, 945, 163 L.Ed.2d 797 (2006).

In this case, there is complete diversity among the parties. Plaintiff is a citizen of Nevada. (*See* Compl. (#1-3) at 3). Defendant PMC is a California corporation. *See* Cal. Sec. of State Business Entity Search, at http://kepler.sos.ca.gov/cbs.aspx (last visited April 13, 2011). Defendant AHMSI is a Texas corporation. (*See* Opp'n to Mot. to Remand (#18) at 4). Fidelity is a California corporation with a principal place of business in Florida. (*See id.*). Additionally, the amount in controversy exceeds $75,000. Therefore, this Court has jurisdiction over this case and denies the motion to remand.

Moreover, the *Colorado River* doctrine does not apply in this case. Under *Colorado River*, a court may stay federal proceedings pending the resolution of a concurrent state court proceeding involving the same matter based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). In this case, there are no concurrent state court proceedings because the lawsuit has been removed to this Court.

**IV.   Fidelity's Ex Parte Motion for a Temporary Restraining Order on Order Shortening Time (#23)**

Fidelity seeks a temporary restraining order against Laperla and third-party defendants from recording any other liens, judgments, or documents against, on behalf, or in the name

8

of Fidelity, its agents, and/or representatives. (Mot. for TRO (#23) at 2). Fidelity also seeks an order restraining Laperla and third-party defendants from collecting on any of their fraudulently recorded documents, liens, and judgments, and seeks an order requiring Laperla and third-party defendants to cease and remove any liens, judgments, or documents recorded against, on behalf, or in the name of Fidelity, its agents, and/or representatives. (*Id.*). Fidelity argues that a TRO is necessary because as each day passes Laperla and third-party defendants have another opportunity to record fraudulent documents against or in the name of Fidelity. (*Id.* at 3). Fidelity argues that they are likely to succeed on the merits because Laperla and third-party defendants have already recorded several fraudulent documents and have committed identity theft and fraud in doing so. (Mem. to TRO (#25) at 7-8). Fidelity argues that if Laperla and third-party defendants are allowed to continue it will be irreparably harmed because the lien adversely affects the company's shareholders and the false recordings interfere with Fidelity's business. (*Id.* at 10).

Federal Rule of Civil Procedure 65(a) allows a court to issue a preliminary injunction on notice to an adverse party.[2] The Ninth Circuit employs two sets of criteria for evaluating a request for preliminary injunctive relief. Under the "traditional test," the movant must establish: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir.2005) (citation omitted). As to the second element, the Supreme Court recently clarified that a plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just possible. *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 375-76, 172 L.Ed.2d 249 (2008). Under the "alternative test," the plaintiff can meet its burden by showing "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Beardslee*, 395 F.3d at 1067 (citation and internal quotation marks omitted). "These two

---

[2] In this case, the Court issued notice to Laperla regarding the hearing. However, she failed to appear. (*See* Docket Sheet Entry #28, 31).

alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Id*. (citations omitted).

In this case, Fidelity has a strong likelihood on the merits because, based on the documents before this Court, Laperla and third-party defendants are filing fraudulent liens and judgments against Fidelity and are filing fraudulent documents with the Washoe County Recorder's office purporting to be from Fidelity. *See* Nevada Revised Statute § 239.330 (stating that it is a felony to knowingly procure or offer any false or forged instrument to be filed, registered or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in a public office under any law of this State or of the United States). Additionally, Fidelity has demonstrated that there is a likelihood of irreparable harm to its company because it is publicly traded and now has a $2,250,000 lien against it. Moreover, Laperla and third-party defendants have demonstrated that they have no qualms about filing false documents and will most likely continue to do so to the detriment of Fidelity. Therefore, the balance of hardships weigh in favor of Fidelity because, without this injunction, Laperla and third-party defendants will most likely try to enforce their false judgments. Accordingly, the Court grants Fidelity's motion for a temporary restraining order/preliminary injunction (#23).

**V.     Fidelity's Ex Parte Motion for an Order Shortening Time (#24)**

Fidelity seeks an order shortening the time to hear its emergency motion for a temporary restraining order. (Mot. to Shorten Time (#24) at 2). The Court denies this motion as moot.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Hofmeister's Motion to Intervene (#8) is GRANTED.

IT IS FURTHER ORDERED that Hofmeister's Motion for Hearing to Expunge Lis Pendens (#9) is GRANTED and, pursuant to NRS § 14.015(5), the notice of lis pendens is cancelled and Plaintiff is ordered to file a copy of this order of cancellation with the Washoe County Recorder's office. This order of cancellation has the same effect as an expungement of the original notice.

IT IS FURTHER ORDERED that Plaintiff's Motion to Remand is DENIED (#15).

IT IS FURTHER ORDERED that Fidelity's Ex Parte Motion for a Temporary Restraining Order on Order Shortening Time (#23) is GRANTED. Laperla and third-party defendants are restrained from: (1) recording any other liens, judgments, or documents against, on behalf or in the name of Fidelity, its agents, and/or representatives, and (2) collecting on any of the fraudulently recorded documents, liens, judgments, or other documents. Laperla and third-party defendants are also required to cease and remove or expunge any liens, judgments, or documents recorded against, on behalf or in the name of Fidelity, its agents, and/or representatives.

IT IS FURTHER ORDERED that Fidelity's Ex Parte Motion for an Order Shortening Time (#24) is DENIED as moot.

DATED: This 28^(TH) day of April, 2011.

_____
United States District Judge